DESH LAW LLC
Amit Deshmukh, Esq.
Attorney ID: AD7741
35-02 150th Place, Suite 206 Flushing, New York 11354
Tel:(862) 213-4960; (201) 849-5246
Attorneys for Plaintiff
KMS TECH, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

────────────────────────────────x

KMS TECH, INC., a New York Corporation,

               Plaintiff,

-against-

G MISSION, INC., a New York Corporation
d/b/a Karaoke City; JAKE KWAK, an individual;
JOHN DOES 1-10 (being fictitious name); and
ABC CORPS 1-10,

               Defendants.
────────────────────────────────x

Civil Action No. CV_____

COMPLAINT

This is an action by KMS TECH, Inc., a New York corporation ("Plaintiff") by and through its attorneys, Law Offices SJ Lee, LLC, to recover damages arising from infringement of its copyright by G MISSION INC. and JAKE KWAK, the owner of the G MISSION INC. (Collectively "Defendants") and to enjoin Defendants from future infringement. Specifically, Defendants have copied Plaintiff's copyrighted software in its entirety, and used and is still using until as of today at its own business and generate profit therefrom without Plaintiff's consent nor

1

permission despite the fact that the Plaintiff notified Defendants of its unlawful activity. Since Defendants infringed Plaintiff's copyright, and since that infringement is ongoing, Plaintiff seeks damages and injunctive relief.

## THE PARTIES

1. The KMS TECH, INC ("Plaintiff") is a New York corporation with its headquarters at 54 East 13 Street #2A, New York, NY 10003. Plaintiff develops, markets, distributes and licenses computer software, more specifically "PlayBox".

2. Upon information and belief, Defendant G MISSION INC., is a New York corporation doing business as KARAOKE CIY, with its principal place of business at 22 West 32nd Street 7th Floor, New York, NY 10001 ("Karaoke City"). Upon information and belief, Defendant is engaged in the business of karaoke singing business. Upon information and belief, Defendant maintains offices and regularly transacts substantial business in this district, and also contracts with third party vendors to supply goods and services within this district.

3. Upon information and belief, Defendant JAKE KWAK ("Kwak"), is a resident of Queens county, and the President of G MISSION INC. Upon information and belief, Defendant KWAK directs, controls, and ratifies the operation and management of Karaoke City, and has a direct financial interest in Karaoke City. Defendant Kwak is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

4. JOHN DOES 1-10 are fictitious names and the parties intended being one or more persons whose identities are presently unknown but will be ascertained during the course of pretrial discovery.

5. ABC CORPS. 1-10 are fictitious entities intended being one or more entities whose identities are presently unknown but will be ascertained during the course of pretrial discovery.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement pursuant to 17 U.S.C. §501 and 28 U.S.C. §§1331 and 1338(a).

7. This court has personal jurisdiction over Defendants pursuant to Rule 4(K)(1)(a) of the Federal Rules of civil Procedure and §§301 and 302 of the New York Civil Practice Law and Rules because, upon information and belief, Defendants have conducted and continues to conduct substantial business in the State of New York. Upon information and belief, Defendants also contracts to supply goods and services, provide its services to the open public and maintains offices within this district.

8. Venue in this district is proper under 28 U.S.C. §§1391 and 1400 because a substantial part of the events giving rise to the claims asserted herein arise in this district, and Defendants, upon information and belief, is and at all times was doing business in this district.

## FACTUAL BACKGROUNDS

9. Commencing on or about February of 2008 and continuing through the present, Plaintiff holds copyright as to a software known as "PlayBox" in which it enables access to operate a karaoke singing platform using window operating system.

10. PlayBox was created on or about 2008 and was registered with USPTO having register number TXu 2-172-793.

3

11. Within said PlayBox, the Plaintiff contracts with third party vendors to provide songs that are inserted into PlayBox, and each song is assigned an unique ID number.

12. At locations where PlayBox is available, the customers select a song using such unique numbers. Upon selection, the song will be played and video graphics will then generate its lyrics on a connected monitor device.

13. All this operation is done by the PlayBox software program based on Window operating system in the computer.

14. Plaintiff sells computers with PlayBox being embedded in the Window operating system, allowing the Karaoke business owners limited use.

15. Furthermore, Plaintiff provides monthly maintenance, which includes updated songs and updates to the PlayBox software.

16. Defendants have, and continue to, own and operate so-called "Karaoke-bar" in the city of New York. Defendants charge customers money to access the many karaoke machines that Defendants have placed on its business premises. More specifically, upon information and belief, Defendants have 20 private rooms with karaoke machines set up for use by customers. The interaction of the customers with those machines, is the primary features of the experience for which customers pay Defendants. Without the karaoke machines, Defendants would not be able to operate its business and would earn no revenue.

17. Upon information and belief, Defendants have purchased some karaoke machines from other third party vendors that primarily contains Korean pop songs.

18. On or about September 2016, separate from the Korean karaoke machine, Defendants have purchased one PlayBox (Model Number KM-100) from Plaintiff. The difference

and distinction between PlayBox and other Korean karaoke machine Defendants have purchased is that PlayBox's primary song lists are English and international songs rather than Korean pop songs. In order to target those patrons that seeks international and English pop songs, the Defendants have purchased PlayBox from the Plaintiff contracting monthly maintenance as thereto.

19. Every month therefrom and until July of 2018, Plaintiff has provided monthly song updates and PlayBox software updates and charged Defendant a monthly maintenance fee.

20. However, sometime in September 2019, Plaintiff was informed that the Defendants have copied the PlayBox and uses unauthorized copies of the PlayBox machines in its own business.

21. On or about September 2019, Plaintiff has visited Defendant's business site and discovered a karaoke machine in which Plaintiff alleges to be and believes it to be the PlayBox that is being used in all 20 private rooms.

22. Upon information and belief, the Plaintiff was informed that the rest of machines that are placed in each room were copied in its entirety and was used to generate revenue without notice to Plaintiff, without permission nor authorization by the Plaintiff, nor compensation given to Plaintiff.

23. On or about October 2019, Plaintiff and Defendant Kwak met and had a settlement conference where both parties wanted an amicable resolution in this matter.

24. The communications and settlement terms and conditions were verbally communicated, agreed, and recorded in a sound recording device.

25. The meeting ended by having all parties to have the agreed terms and conditions to be memorialized in writing, reviewed by each counsel, and executed once ready.

26. Plaintiff retained this office to draft proposed settlement agreement, which was delivered to Defendants' counsel on or about October 8, 2019.

27. For weeks, the Defendant's counsel did not respond to the proposed settlement agreement indicating that the Defendants have not confirmed to nor provided any response thereto.

28. Thus, Plaintiff has sent Cease and Desist letter to Defendants' counsel of its ongoing misuse and unauthorized use of copyrighted material and immediately seize of creating revenue therefrom.

29. Again, no response was given from Defendants and upon information and belief, Defendants are continuously misusing Plaintiff's copyrighted PlayBox and generates revenue.

30. During all periods relevant to this action, Plaintiff has had and continues to have the exclusive rights in the copyright under the Copyright Act to the registered PlayBox, including a) the exclusive right to reproduce the registered material, b) the exclusive right to distribute copies of the copyright materials to the public by sale, rental, lease, or lending, c) exclusive right to perform the registered copyright materials, and d) the exclusive right to display the registered copyright material publicly.

31. Within the past three years Defendants have copied, misused, and infringed Plaintiff's copyrighted material without permission, grant, and authorization, and further generated revenue through its illegal action.

**FIRST CLAIM FOR RELIEF COPYRIGHT INFRINGEMENT**

**(Against All Defendants)**

32. Plaintiff realleges and incorporates herein by reference each and every allegations set forth in Paragraphs 1 through 29, hereinabove, inclusive, as though set forth at length herein.

33. As set forth in detail above, Plaintiff is the copyright owner of the PlayBox and has the exclusive rights to grant licenses to copy, use, and publicly perform PlayBox.

34. Since the day Defendants purchased the first PlayBox from Plaintiff, Defendants intentionally copied and duplicated PlayBox, then, used the duplicated PlayBox in each karaoke private room within its business, caused or authorized the public performance and public display. Each of the duplicated PlayBox and public displays and performance is without a license or authorization from Plaintiff.

35. Thus, Defendants have knowingly and intentionally authorized, caused, and engaged in the unlicensed duplication and public display of registered copyright PlayBox in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§106(4) and (5).

36. Upon information and belief, Defendants' unlawful conduct has continued since the inception of the Karaoke business on a nightly basis and on such numerous occasions that recounting each specific instance of infringement is impossible.

37. Each unauthorized use of duplicated PlayBox constitutes a separate and distinct act of direct copyright infringement.

38. Each unauthorized public display and performance using duplicated PlayBox constitutes a separate and distinct act of direct copyright infringement.

39. The specific acts of copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage. By continuing to provide unauthorized public displays and continued use of the

unauthorized duplicated PlayBox at Defendants' business site, Defendants threaten to continue committing copyright infringement on essentially a daily basis diluting and damaging Plaintiff's copyright. Unless this Court restrains Defendants from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

40. Plaintiff further seeks an order under 17 U.S.C. §503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machine that operates on a PlayBox system.

41. Pursuant to 17 U.S.C. §504(c), as a direct and proximate result of Defendants' direct infringement of Plaintiff's copyright, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the registered copyright infringed. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. §504(b), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the registered copyright as will be proven at trial.

42. Plaintiff is also entitled to recover attorney's fees and costs pursuant to 17 U.S.C. §505 and prejudgment interest according to law.

## SECOND CLAIM FOR RELIEF

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (Against All Defendants)

43. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraph 1 through 40, hereinabove, inclusive, as though set forth at length herein.

44. As set forth in detail above, Plaintiff is the copyright owner of the registered PlayBox and has the exclusive right to grant licenses for the public displays and copy of said PlayBox in the United States.

45. Defendants charge customers money to access the karaoke machines that Defendants have placed in the karaoke business premises. Customers pay Defendants an hourly rate for access to one of Defendant's private rooms, wherein customers are provided the opportunity to sing the song that is already incorporated in the karaoke machine that is placed inside the private room. Upon information and belief, each private room is using an unauthorized duplicated PlayBox built-in karaoke machine without license nor permission. Furthermore, providing unauthorized duplicated PlayBox built-in karaoke machin in each room provides an opportunity and ability to cause the public display of copyrighted Playbox. The sole purpose of the individual private room is to provide customers with a space to perform and to publicly display of musical compositions through the use of copyrighted PlayBox, and to charge customers for such use.

46. By providing customers the space and ability (i.e. by furnishing the individual private rooms with an unauthorized duplicated PlayBox built-in karaoke machine and video monitors and speakers to display logo, lyrics, and so forth) to publicly perform and to publicly display of songs using copyrighted PlayBox, Defendants have knowingly and systematically induced, caused, materially contributed to and participated in the infringing activity.

47. Furthermore, as sophisticated business owner, Defendant Kwak, knows that he must have a license to copy, use, and publicly display of PlayBox karaoke machine and its contents within Karaoke business premises. Prior to this litigation, Defendants were in receipt of,

and/or were aware of, and admitted to the fact that Defendants' copy of PlayBox was a copyright infringement, and further was advised to have such unlawful activity to be ceased by sending cease and desist letter by the Plaintiff.

48. Upon information and belief, Defendant's contributory unlawful conduct has continued since the inception of the Karaoke business on a nightly basis and on such numerous occasions that recounting every instance of infringement is impossible.

49. Each unauthorized copy of PlayBox constitutes a separate and distinct act of contributory copyright infringement.

50. Defendants' conduct has been and continues to be intentional, willful, and with full knowledge of Plaintiff's rights in the copyright PlayBox, and the contributory infringement thereof.

51. The specific acts of contributory copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage. By continuing to provide customers the use of unauthorized copied PlayBox built-in Karaoke machine and its public display of its contents at Defendants' business premises, Defendants' threaten to continue committing copyright infringement on essentially a daily basis. Unless this Court restrains Defendants' from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

52. Plaintiff further seeks an order under 17 U.S.C. §503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machine that operates on a PlayBox system.

53. Pursuant to 17 U.S.C. §504(c), as a direct and proximate result of Defendants' direct infringement of Plaintiff's copyright, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the registered copyright infringed. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. §504(b), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the registered copyright as will be proven at trial.

54. Plaintiff is also entitled to recover attorney's fees and costs pursuant to 17 U.S.C. §505 and prejudgment interest according to law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against the Defendants as follows:

## On All Claims for Relief:

(1) That the Court issue injunctive relief against Defendants, and that Defendants, its directors, principals, officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained from copying, modifying, distributing, and public display or performance or making any other infringing use of Plaintiff's software, PlayBox;

(2) That the Court order directing the impoundment or other reasonable disposition of all infringing duplicated machines that uses or have PlayBox software, including all equipment containing or enabling performance or display of songs using PlayBox platform;

(3) That the Court order Defendant to pay Plaintiff's actual and consequential damages incurred, in an amount to be determined at trial or, in the alternative, statutory damages as set forth in 17 U.S.C. §504(c);

(4) That the Court order Defendant to account for and disgorge to Plaintiff all profits derived by Defendant from its unlawful acts;

(5) That the Court order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

(6) That the Court order Defendant to pay Plaintiff's litigation expenses, including reasonable attorney's fees and costs of this action; and

(7) That the Court grant Plaintiff any such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all the triable issues.

DESH LAW LLC
*Attorneys for Plaintiff*

Dated: 2/5/2020

_____
Amit Deshmukh, Esq.