```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


KMS TECH, INC.,                        : Docket #20-cv-01041

                    Plaintiff,    :

     -against-                         :

G MISSION, INC., et al.,          : New York, New York
                                    November 28, 2023
                    Defendants.

------------------------------:

                   PROCEEDINGS BEFORE
              THE HONORABLE VALERIE FIGUEREDO
               UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:        PARDALIS & NOHAVICKA, LLP
                      BY:  TODD B. SHERMAN, ESQ.
                         ELENI MELEKOU, ESQ.
                      950 Third Avenue, 11th Floor
                      New York, New York 10022



For Defendants:       BARTON, LLP
                      BY:  MAURICE N. ROSS, ESQ.
                         BARAK BACHARACH, ESQ.
                      711 Third Avenue, 14th Floor
                      New York, New York 10017



Transcription Service: Marissa Mignano Transcription
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

INDEX

E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

1           THE DEPUTY CLERK:  KMS Tech, Inc. versus

2    G Mission, Inc., et al., Case Number 20-cv-1041.

3    The Honorable Valerie Figueredo presiding.

4           Counsels, can you please make your

5    appearances for the record, starting with

6    plaintiff's counsel.

7           MS. MELEKOU:  Good morning.  This is

8    Eleni Melekou -- go ahead.

9           MR. SHERMAN:  Todd Sherman and

10   Eleni Melekou on behalf of the plaintiff.  Thank

11   you.

12          MR. ROSS:  Good morning, Your Honor.  This

13   is Maurice Ross on behalf of the defendants and

14   counterclaim plaintiffs.  And my associate,

15   Barack Bacharach will handle this hearing, he is on

16   the line with us.

17          MR. BACHARACH:  Good morning, Your Honor.

18   This is Barack Bacharach.

19          THE COURT:  Good morning, everyone.  This

20   is Judge Figueredo.

21          So I gather the parties wanted to have a

22   conference to discuss potentially the scope of what

23   the joint expert was going to be addressing or the

24   discovery schedule.  So I'm happy to have anyone who

25   wants to start off go ahead with what you'd like to

```
 1    discuss.
 2             MR. BACHARACH:  Your Honor, this is
 3    Barack Bacharach for the defendants.
 4             So I think the parties wanted to discuss
 5    the scope of two issues.  As you mentioned
 6    correctly, yes, we would like to discuss the scope
 7    of the expert comparison.  Now, I believe, since our
 8    last status conference, it's plaintiff's expert.
 9    It's no longer a joint expert.  And secondly, we'd
10    like to discuss what costs plaintiff is to
11    compensate defendants for that were mooted by
12    plaintiff's late introduction of the deposit.
13             And, really, we're here because plaintiff's
14    counsel has just been not reasonable in pursuing
15    this action throughout this whole entirety, that's
16    why it's been delayed so long.  And this is a
17    pattern that's continued.  It's clear what the scope
18    of the expert comparison was to be.  And plaintiff
19    presented -- and defendants generally offered
20    plaintiff to inspect their premises and come and
21    inspect the machine and have -- and provide the
22    expert with any passwords he might need to access
23    it.  Plaintiff presented an unreasonable list of
24    demands, including a technical support person to
25    essentially do the expert's job for him, as well as
```

1    for defendants to cover the cost of shipping the

2    machine from their own premises to the expert's

3    office.

4         And on top of that, when defendants asked

5    plaintiff to re-compensate them for the reasonable

6    attorney's fees that were mooted by their late

7    instruction of the deposit, plaintiff only agreed to

8    pay $1,400, less than 5 percent of the fees that

9    were incurred, and a facially ridiculous amount.

10        So it's been very hard because really the

11    demands that plaintiff is placing on defendants is

12    unreasonable.  It's plaintiff's burden to prove this

13    case.  It's plaintiff's burden for their expert --

14    to incur the cost of the expert.  And plaintiffs

15    have to compensate defendants for the costs they

16    incurred that were mooted by their behavior.  And

17    they just won't do it.

18        THE COURT:  Sorry.  Can we just take a step

19    back?  Because I'm not entirely following.  And,

20    again, correct me if my recollection is wrong.  I

21    thought the issue of cost had to do with the cost of

22    briefing that portion of the summary judgment motion

23    that defendants had incurred prior to the reopening

24    of fact discovery.

25        MR. BACHARACH:  Yes.  And plaintiffs have

```
 1    only agreed to compensate a minute -- a tiny amount
 2    of those costs.
 3              THE COURT:  Okay.  So that seems to me like
 4    a separate issue from the expert.
 5              MR. BACHARACH:  Yes, it is a separate
 6    issue.
 7              THE COURT:  Okay.  So maybe we can just
 8    take one issue at a time.  Specifically, what's the
 9    issue with regards to the expert?
10              MR. BACHARACH:  The issue with regards to
11    the expert is, it was always our understanding -- it
12    was always defendant's understanding, and I believe
13    it was everyone's understanding, that the necessity
14    of this expert -- let's go back.  Let's do the
15    timeline a little bit, right?
16              Plaintiffs sold defendants the software,
17    the PlayBox software in 2015, but they didn't
18    register the copyright until 2019.  Moreover,
19    plaintiffs didn't keep records of their software.
20    And at deposition, the software engineer who
21    designed the software for plaintiffs admitted it was
22    updated multiple times, right?
23              So the fundamental issue with plaintiff's
24    case and why they want to introduce the certified
25    deposit was that plaintiff could not prove that they
```

1    sold defendants a copy of the software that was

2    copyrighted.  And the reason they couldn't do it

3    with accessing the machine that they sold to

4    defendants is because they lost the record of what

5    they actually sold to defendants.

6            It was always our understanding that the

7    relevant expert comparison would be between the

8    certified deposit showing what was copyrighted, as

9    well as -- and compared that to the version of the

10   PlayBox that plaintiffs sold defendants.  That is

11   what we offered plaintiff's expert to come and

12   inspect on our premises, is what our understanding

13   the comparison was to be.  And instead, plaintiff

14   demanded access to every single copy of the software

15   that defendants may have made, including copies that

16   were put on other machines and modified in certain

17   ways, even though defendants have long admitted to

18   copying those.  And, also, a bunch of other

19   unreasonable demands on defendants, like a dedicated

20   technical support person to essentially do the

21   expert's job for him.

22           So we're just kind of at an impasse as to

23   what the scope of this comparison should be and what

24   defendants --

25           THE COURT:  So it sounds like, as I

```
 1    understand it, there was the certified copy on
 2    deposit 2019.  There's the version of the PlayBox
 3    software that was sold to you in 2015.  And
 4    defendants have since made copies of that software.
 5         MR. BACHARACH:  Yes, but I should say the
 6    copies -- so it's important to understand this
 7    for -- it's important to understand something about
 8    the copies.  The copies are not exactly direct
 9    copies.  Defendants always bought the PlayBox
10    software as a backup, and the reason they bought it
11    was because it had access to foreign language songs
12    that defendants otherwise didn't have.  And it was
13    always going to be integrated with the defendant's
14    larger main system.  It was a secondary system.
15         So defendants made some copies of the
16    software, but they made the copies to integrate it
17    with certain other machines.  So in making those,
18    quote/unquote, copies, what they really did is, they
19    took certain elements of the PlayBox software and
20    they put it in other machines.  And those elements
21    are discordant.  They are not whole.  They might --
22    probably don't match the certified deposit.  And,
23    again, defendants have long admitted to making these
24    copies.  So we just don't understand what
25    defendants -- or why plaintiffs want access to these
```

1    copies, what the point of the comparison is.  We're
2    willing --
3             THE COURT:  Let me just ask, the copies you
4    made would have been of the 2015 software.
5             MR. BACHARACH:  Would have been of the --
6    yes.
7             THE COURT:  So maybe I'm missing something.
8    But if they inspect the 2015 software, it sounds
9    like what you copied were pieces of that.  So that's
10   what you would see in whatever other iteration you
11   might have this software in, but it would still
12   fundamentally be pieces of the 2015 software.
13            MR. BACHARACH:  Yes.
14            THE COURT:  Okay.  I'm happy to hear from
15   anyone, Ms. Melekou or Mr. Sherman, on just this
16   issue of what the expert is going to be comparing or
17   evaluating.
18            MR. SHERMAN:  Thank you, Your Honor.  This
19   is Todd Sherman.
20            That was overly complicated.  A lot of the,
21   quote/unquote, demands that were referenced are
22   really looted by meet and confers that occurred that
23   were not referenced.  And they weren't demands.
24   They were issues that were thought to be needed to
25   make things more efficient.  However, the real issue

1    is, what are the plaintiffs permitted to inspect?

2            What we want to do, and what our expert has

3    told us that is necessary, is to have him go to the

4    defendant's facility, examine the PlayBox that was

5    sold to the defendant and also examine the copies

6    that they admit they made, because the question is,

7    were these copies true copies?  Are they infringing

8    or are they not infringing?  That's ultimately the

9    legal question that will have to be answered.

10           They acknowledge copying.  But then in the

11   explanation that was just provided to the Court,

12   there was a lot of characterizations that we don't

13   know to be accurate.  And I'm not suggesting for a

14   second that counsel is misrepresenting anything.

15   I'm saying that his client may be; we don't know.

16   And there's an allegation of copyright infringement.

17   The expert needs to inspect the software to

18   determine whether or not it is, in fact, infringing.

19   And there's an expert analysis, a fact analysis.

20   There's a legal analysis.  And what we've been told,

21   no -- and it's been a hard no -- to is, doing an

22   inspection of the copied software.

23           Now, Your Honor, as we review the

24   transcripts of the prior conferences/hearings, that

25   address this issue, authorized what is now the

1    plaintiff's expert to inspect the defendant's

2    software.  And the defendant's software is the

3    copies.  And we're not being given access to that.

4    And we don't believe it's an unreasonable request.

5            In terms of the technical support, I

6    believe that what that was really narrowed down to

7    was, if we need a password to get into the system,

8    please don't make us have to hack in.  If there's a

9    password, just give it to us.  And, of course, if

10   you want somebody there while our expert, who you

11   vetted and approved, is there doing their work, of

12   course you can observe them because it's your

13   facility.  But all the other issues that were raised

14   in terms of technical support were mooted by

15   discussions that happened weeks ago, and they're no

16   longer an issue.

17           So the only issue right now is, can the

18   plaintiff please inspect the software that we

19   believe to have been infringed so that we can make

20   the proper analysis and come forth to the Court as

21   we need to.  That's all we want to do with respect

22   to the software, is copy -- excuse me, is make

23   copies of, as is appropriate for the expert's use,

24   of course, of what's in the Play- -- inspect the

25   PlayBox, copy what's in the PlayBox, inspect the

```
 1    copies, copies -- duplicate the copies, do whatever
 2    inspection that a software expert does, and report
 3    to us and the Court, as appropriate, what the
 4    findings are.  And we --
 5             MR. BACHARACH:  So --
 6             MR. SHERMAN:  -- all unreasonable.
 7             MR. BACHARACH:  I would just like to make a
 8    very brief point in response.
 9             So we also reviewed the transcript and it
10    very specifically said -- at least we believe the
11    Courts very specifically say the copy, singular,
12    that the expert could inspect, the copy, singular,
13    that plaintiffs sold to defendants.
14             Also, this is what -- I think there's the
15    fundamental disconnect here.  We thought that it was
16    agreed upon that the fatal flaw in plaintiff's
17    infringement theory that the deposit was supposed to
18    correct was whether or not they initially sold
19    defendant's copyrighted software.  Defendants have
20    long admitted to copying that software.  Now, we say
21    it's with the license.  However, if the software
22    that defendants -- that plaintiffs sold defendants
23    is indeed covered by deposit, there is no, sort of,
24    issue that then copying that, if it was a license,
25    would be infringed.  That's not the legal issue, at
```

1    least as we see it, or we thought everyone saw it.

2         So we always thought that the relevant

3    comparison was between, again, what was sold to

4    defendants and the certified deposit.  And I still

5    have yet to hear a rationale for why, since we've

6    admitted to copying it, plaintiff's expert needs to

7    inspect the copies, right?  If they can prove that

8    the certified deposit covers what they sold, that's

9    the end of the infringement equally, correct?

10    Unless I'm mistaken.

11         MS. MELEKOU:  Your Honor, Eleni Melekou

12    here.

13         Defendants have already admitted that they

14    copied, but this happened more than a year ago, and

15    here we are now again.  And if we don't have access

16    to the copy of the defendant, we will find ourselves

17    in the same position, in the same place, in a few

18    months from now.

19         So what plaintiff has to prove is whether

20    the allegedly infringing software is similar to the

21    copyrighted software.  And this is what the case law

22    show us, that the analysis and the comparison is

23    between the allegedly infringing software and the

24    copyrighted software.  And, again, if we don't have

25    access to the copy, then in a few months from now,

1    let's say in February, once the expert discovery is

2    concluded, defendants might present an argument that

3    somehow the transfer of the software caused the

4    software to be different, so defendants used an

5    entirely different software.  So we will find

6    ourselves in the same place as we are now.

7         MR. ROSS:  Your Honor, this is

8    Maurice Ross.

9         The problem with this situation is it

10   ignores the history.  The history of this matter is

11   that, after the deposition, an agreement was

12   reached.  We admitted that copies were made of the

13   software; they were not exact copies.  The copies

14   were manipulated so that they would stitch together

15   with other software.  So the copies, we already know

16   they don't match the original software.

17        But putting that to the side, there was a

18   stipulation that no more discovery would be

19   necessary.  And remember, what happened here is the

20   plaintiff delayed for months providing the deposit.

21   In fact, we made the summary judgment motion

22   because, at that time, they hadn't produced the

23   deposit.  The Court allowed them to reopen discovery

24   for the limited purpose of allowing them to conduct

25   a comparison between the original software in the

1    PlayBox and the deposit.  The Court never allowed
2    them to reopen discovery so they could go into our
3    offices and obtain copies of every copy that was
4    ever made.  And the copies really don't exist as
5    pure copies.  They were all stitched together.  And
6    what they want to do is reopen discovery way beyond
7    what the Court contemplated and essentially require
8    us to give them all of the copies.
9           We acknowledge that all they need to do to
10   prove infringement is to prove that the original
11   software in the original PlayBox matches the deposit
12   and it's substantially similar to the deposit.  Once
13   they prove that, then they prove an infringement.
14   And then the question simply is whether the
15   defendant had the right to make the copies pursuant
16   to the license.  But for them to engage in this new
17   round of discovery and ask to see all, whatever,
18   20 copies were made and to inspect all of them, it's
19   way beyond the scope of anything that the Court
20   contemplated.  It really complicates this matter.
21          This should be very simple.  The only
22   comparison that is necessary to prove infringement
23   is between the software in the original PlayBox and
24   the deposit.  Nothing more is required to prove
25   infringement.  We admit that we made copies.  We say

1    we had the right to make the copies.

2         And understand, defendant's counsel

3    agreed -- there was a stipulation long ago that,

4    because defendant agreed that we made copies, the

5    only remaining issue was whether the original

6    software matched the deposit.  That's the problem

7    here.  And what they're trying to do is just reopen

8    discovery full-fledged.  We think it's improper.

9         THE COURT:  Can I just ask a question?

10   Because it sounds together -- at various points,

11   people have said defendants made copies.  But then

12   at other times, it seems like it's not actually a

13   copy.  It's something that was, and I'm quoting, I

14   thought someone said stitched together with other

15   software.  So it sounds --

16        MR. ROSS:  That's right.  And that's a very

17   key point, Your Honor.  This is Maurice -- that's a

18   very key point.

19        You have to understand the concept here was

20   to use the software in the PlayBox, but it had to be

21   combined to fit in our other system.  The PlayBox

22   was not the major system used in the facility.

23   There was another system that is the main system,

24   and it had its own software.  But the PlayBox

25   software integrated certain access to foreign songs.

1          So what would happen is, the two softwares
2     would essentially be manipulated and stitched
3     together.  So the copies that exist are not -- they
4     will have pieces of the PlayBox software, but
5     they've been manipulated to the point where it may
6     be misleading to conduct a comparison.  The only
7     real solid, clear comparison is between the original
8     software and the deposit.
9          THE COURT:  And when was the
10    stitched-together software put together?
11         MR. ROSS:  Well, over the years.  I mean,
12    see, understand -- what happened here is, PlayBox
13    was purchased for the purpose of having access to
14    these foreign songs that were not available in the
15    preexisting system.  So what would happen is, the
16    client would take the software from the PlayBox and
17    integrate it into other computer systems.  And in
18    order to do that, you take that software and it
19    becomes integrated or stitched into the system with
20    other software.  I have no doubt that portions of
21    the software in the copies may map the deposit.
22    They may.  But it's going to be very complicated to
23    compare those copies with the deposit, and it's
24    going to create all kinds of complicated, different
25    issues on the issue of infringement.

1            The infringement issue should be very
2    straightforward.  If the deposit matches the
3    original software in the original PlayBox, then
4    we've stipulated that the copies infringe.  We're
5    not disputing that, okay?  So it's a red herring to
6    say they need to get into all the copies.  Our
7    position on the copies has simply been we were
8    entitled to make them.  It was part of the license
9    agreement that we received.  But we're not disputing
10   that the copies infringe.  And, therefore, the only
11   necessary comparison is between the original
12   software and the deposit.
13           THE COURT:  And I'm just thinking through
14   this out loud, but why aren't they able to argue
15   that potentially the copies infringe what's
16   registered in 2019?  Because your admission is that
17   it would have infringed whatever software was sold
18   to you in 2015.  But it sounds like, potentially,
19   they could make a different argument as to
20   infringement.
21           MR. BACHARACH:  Well, Your Honor, that, in
22   our mind, would be the point of -- sorry.  This is
23   Barack Bacharach for defendants.
24           Your Honor, that would be the point of
25   comparing the software that plaintiffs sold to

1    defendant in 2015 with the certified deposit.  That

2    is the link that would establish infringement, if

3    you will.  Because if the software that plaintiff

4    sold defendants in 2015 is covered by the deposit,

5    if that is indeed copyrighted, then defendants have

6    long admitted that the --

7            THE COURT:  I think my question is slightly

8    different, right?  It sounds like you made these

9    copies over time.  So maybe the 2019 registered

10   copyrighted version of the software doesn't match

11   what was given to you in 2015.

12           But why don't they have a separate argument

13   that the copies that you made between 2015 and later

14   could potentially infringe what was registered in

15   2019?

16           MR. BACHARACH:  Because those copies would

17   be pieces of what was sold to defendants in 2015.

18   So it's the same.  Those copies would be more far

19   removed from -- if the software that was sold -- if

20   the software that was sold to defendants in 2015

21   doesn't match up with the copy in 2019, then ipso

22   facto copies that are more far removed from that

23   software and even less similar to what was

24   registered are infringing, right?  Those copies are

25   still pieces of what was sold to defendants in 2015.

1          MR. SHERMAN:  Your Honor, most

2    respectfully -- this is Todd Sherman on behalf of

3    the plaintiff.

4          We're hearing a lot of what appears to be

5    factual contentions that have never been

6    established.  So that is one of the main reasons why

7    we need to inspect these copies because we're being

8    told there's a copy.  There's a copy.  Part of it's

9    a copy.  There's a connection to a copy.  But what

10   really is it?  And without having the opportunity

11   for our expert, who, again, they vetted and

12   approved, inspect the software, we're at a loss.

13         And this isn't reopening discovery.  It's

14   an issue that's been open and being addressed since

15   the introduction of the certified deposit.  So

16   nothing that we're requesting is unreasonable or out

17   of the ordinary for a copyright infringement case.

18   We're not hearing a stipulation that each and every

19   one of our copies is an infringement.  "There is no

20   need for you to inspect because we admit infringing

21   your software."  We're not hearing that.  We hear

22   that there's a copy, and then we're hearing that

23   there's fragments, pieces, or things that are tied

24   together.

25         Now, if this is all, in fact, true, it may

```
 1   very well be an infringement.  I am very confident
 2   that there will be an argument to the contrary.  And
 3   that's why we needed an inspection and an analysis
 4   to be able to come forward and also to confront any
 5   such argument.  And, again, this isn't like we're
 6   trying to go and publish their information to the
 7   entire free world.  We're looking to inspect and
 8   analyze for the purpose of this litigation.  So
 9   there really should be no -- this shouldn't even be
10   an issue.  There's a copy; we're alleging that it
11   was improperly made.  They're alleging that it
12   wasn't.  They're alleging that we're contending that
13   there's no infringement; we're contending that there
14   is.  The evidence of the infringement is the copies
15   in addition to -- there's a chain.  There's what was
16   created, what was sold, what was copied, and how it
17   was used.  And all of those things are elements of
18   the infringement claim.  And it's not unreasonable
19   for the plaintiff to want to conduct the inspection
20   that we've requested and we believe was already
21   authorized.  It's that disagreement that brings us
22   before you today.
23           MR. ROSS:  Your Honor, this is
24   Maurice Ross.
25           Very respectfully -- very respectfully,
```

```
 1     Counsel makes reasonable points, except for one
 2     problem -- two problems.  We're not dealing with
 3     this problem in a vacuum.  This case goes back to
 4     2019.  What they're trying to do now is something
 5     that they could have done years ago.  But, at one
 6     point, there was an agreement they didn't need to
 7     see the copies.  We admitted that if the original
 8     software that they provide to us infringes, the
 9     copies infringe, okay?
10          Now, they say they have to look at the
11     copies.  I don't know how it could be more clear.
12     We will admit that, if the original software in the
13     PlayBox infringes, matches the deposit, the copies
14     are infringing.  Now, we believe we have the right
15     to infringe.  But you see, the problem here is
16     also --
17          THE COURT:  This is, I guess, what I'm not
18     following is why -- it sounds like you would admit
19     that the copies infringe if the original software
20     infringes.  And I was asking earlier, why can't they
21     say -- or why can't they make an argument that even
22     if the original software doesn't infringe, the
23     copies themselves could infringe?
24          MR. ROSS:  Because, Your Honor, they're not
25     real copies, first of all.  They're going to be
```

1    stitched together with other software.  It's a
2    problem; they could make that argument.  The
3    copies -- we're not going to have magically -- if
4    the original software didn't infringe, we're not
5    going to somehow create on our own copies that
6    magically infringe.  I mean, that's just not
7    realistic.
8         THE COURT:  No, but there's other ways to
9    infringe the copyright that's not a literal copy if
10   it's substantially similar.
11        MR. ROSS:  Well, I understand that,
12   Your Honor, but this is just -- would be allowing
13   them to reopen discovery.  They stipulated years ago
14   that they didn't need this discovery.  And the
15   disruptions in my client's business, if we have to
16   give them access to all of these copies, is
17   substantial, and we're at a point where this is just
18   not fair.  It's unreasonable.
19        Frankly, the Court should never have given
20   them the opportunity, after they missed many
21   deadlines, to even conduct this comparison.  It was
22   very generous of the Court to allow them to reopen
23   discovery to conduct this very limited comparison
24   between the original software.  And to allow them to
25   now reopen this whole mess, I think it's

 1    fundamentally unfair to my client.

 2            THE COURT:  So, Mr. Ross, two things.  One

 3    is how many copies are we talking about?  Because

 4    you're making this argument that there's a burden,

 5    but there's no specifics being provided.

 6            MR. ROSS:  I don't know the exact number,

 7    but they had 18 rooms and they used the PlayBox in

 8    many of the rooms.  So you can presume it's 6 feet

 9    or 8 feet.  There's a number of copies.

10            And we're admitting that we copied it, that

11    we copied -- that we used elements of their

12    software.

13            THE COURT:  And then just one more

14    question.  You had said earlier that they had

15    stipulated or that there had been some agreement

16    that led defendants to stipulate to the copying.

17            Is that somewhere on the docket?

18            MR. ROSS:  No, Your Honor.  That was an

19    agreement that occurred with Gregory Nahas and

20    myself after the depositions, wherein their

21    witnesses admitted that they had updated the

22    software on multiple occasions and so forth.  And we

23    admitted that we made copies and that the copies --

24    that if the original software matches the

25    copyrighted deposit, that those copies infringe.

1    And I'll admit that on the record today.

2         MR. BACHARACH:  I believe it's memorialized

3    in the emails as well.

4         MR. SHERMAN:  Your Honor, this is

5    Todd Sherman.

6         A look at the record doesn't reveal any

7    such a stipulation.  What it does show is that,

8    during the deposition testimony, I believe, of a

9    representative of the defendants, that there was an

10   interjection by Mr. Ross where he asserted that the

11   software was copied.  I don't even believe it's

12   testimony from the defendant himself.  I'm not sure

13   if it was because of a language barrier because I do

14   believe that the deposition may have been conducted

15   in a foreign language.  I'm not 100 percent sure.

16   My recollection isn't that clear.

17        But it is my recollection that Mr. Ross had

18   interjected that it was copied.  We admit it was

19   copied.  But that's not a stipulation, and it's

20   certainly not an agreement to not investigate or not

21   assess.

22        And, again, now we're hearing that there is

23   all these different uses of our client's software

24   and there's mentions of a license agreement that we

25   also don't agree is in the record or exists with

1    these vast terms.  So there's a lot of factual

2    issues that are being argued now by defendant's

3    counsel that go very well to the heart of why

4    inspecting the copies, whether in whole or in part,

5    because it seems like there was manipulation done to

6    our client's software, which itself may be an

7    infringement that we're being blocked or attempted

8    to be blocked from seeing.

9         And our request, again, we just

10    respectfully submit that it's not unreasonable to

11    want to see the software that we allege to have been

12    infringing.

13         THE COURT:  Okay.  And I know the

14    parties -- I don't want to run out of time, but I

15    know the parties have said there was a second issue

16    that they want to discuss.

17         MR. SHERMAN:  Yes, Your Honor.  This is

18    Todd Sherman again, for the record.

19         It goes to the amount of compensable costs

20    associated with the drafting of the defendant's

21    summary judgment motion because a particular issue

22    was, in fact, mooted by the Court's acceptance of

23    the certified deposit that was, in fact, filed late.

24    And we acknowledge that.

25         And during the last hearing before

1    Your Honor, we addressed the Rule 16 authority of

2    the Court, and we acknowledged that the Court had

3    discretion, and what it did in exercise of that

4    discretion was assess costs on the limited issue to

5    the plaintiff.  And we acknowledged that.  And I

6    believe that resolved our motion for

7    reconsideration.  And I think that that's what the

8    whole point of that conference was.

9            There's a dispute as to what the costs

10   associated with that motion and that particular

11   prong of the motion are compensable.  And we did, in

12   fact, receive invoices from defendant's counsel.

13   Ultimately, they were unredacted, not getting into

14   details, because we agreed to keep it attorney's

15   eyes.  And so I know that this record itself is

16   public.  So I'm not going into any detail for that.

17   But we disagree as to -- solely, of course, on the

18   invoice.  A hearing could expand on it.  But based

19   upon the invoice, of the entries on the invoice, we

20   disagree that a vast majority of what is being

21   attributed -- distinct portion of a motion -- and

22   the directive Your Honor had ordered because we

23   disagree that this vast array of costs would be

24   associated with -- again, on the face of the trans-

25   -- and yes, we did discuss this at length with both

1    Mr. Ross and Mr. Bacharach.  We had extensive

2    discussions in meet and confer sessions, trying to

3    nail it out.  And, unfortunately, it's a very

4    fact-specific inquiry.

5         And on the papers below of just the

6    invoices, we cannot come to an agreement.  Yes, the

7    number that we propose, based upon a review, I

8    believe -- and this is just based upon notes that I

9    had taken several weeks or months ago -- was $1,140.

10   I know that the defendants disagree.  I'm not saying

11   that to be offensive.  I'm saying it to just be

12   clear to Your Honor, that that's what we computed

13   based upon our view of the invoices.  And it wasn't

14   in an attempt to do anything but interpret what we

15   were seeing and come up with a number that we

16   believed was taking the invoices at face value, not

17   questioning the veracity of anything.  These dollar

18   figures appear to be associated fairly with that

19   particular argument and briefing that particular

20   argument, and that's where that number came from.

21        MR. BACHARACH:  Your Honor, I fundamentally

22   dispute what Mr. Sherman said.  Sorry.  This is

23   Barack Bacharach for defendants.

24        So I can get into a little bit more factual

25   detail than what Mr. Sherman mentioned.  Defendants

1    incurred about $40,000 in expenses preparing this

2    motion.  Defendants requested only half, $20,000.

3    And we thought that was eminently reasonable and, in

4    fact, fair because the majority of this work was

5    spent on the issue of the lack of the deposit,

6    right?

7              The other issue, the fact that plaintiffs

8    sold defendants software for music that they

9    evidently did not have licenses to, is a discrete

10   and simple legal issue.  It required no factual

11   background.  It required very little factual

12   background.  It required very little research on

13   case law.  It's a simple matter of applying the

14   doctrine of unclean hands and copyright to misuse.

15             Now, the other issue, the fact that

16   plaintiff instituted this action without any records

17   of their own software or the copyrighted deposit

18   itself, that is a very factually detailed issue and

19   also a legally, sort of, far-out-there issue, right?

20   It's not very often that you find cases that

21   requires a lot of the development of case and that

22   requires a lot of review of case law.  It requires a

23   development of a law of factual background.

24             And plaintiff took the position that only

25   one quarter of the time spent drafting the brief was

1    compensable.  They took the position that not only

2    was not the legal research required for making the

3    argument about the certified deposit, the factual

4    background -- long, detailed factual background

5    required, all the time spent reviewing the documents

6    to figure out what happened, why this delay

7    happened, what their misconduct was.  Not only is

8    that not compensable, plaintiffs took a position

9    that the actual drafting of the factual background

10   that explains this whole long pattern of delay and

11   refusal to provide the deposit, they took position

12   that that itself was not compensable, even though

13   defendants only asked for half of those costs,

14   right?

15        We could have asked for all that, in

16   fairness, because that had nothing to do with the

17   fact that, in 2015, they sold our client software

18   for music they didn't have a license to.  We could

19   have asked for all the cost of that; we only asked

20   for half.  And they still took the position that

21   none of that was compensable.  So I really dispute

22   that this was a good faith effort to look at bills

23   and to figure out what was --

24        MR. SHERMAN:  Your Honor, again, this is

25   Todd Sherman.

1              I apologize.  But Your Honor directed that

2    the costs that were compensable were solely

3    associated with drafting the particular argument of

4    their brief that dealt with the delay in filing the

5    certified deposit.  The other arguments are wholly

6    unrelated.  And so those costs could never have been

7    compensable under Your Honor --

8              MR. BACHARACH:  So --

9              MR. SHERMAN:  -- and the factual

10   background, to the extent that it's a statement of

11   facts in a brief, they would have had to do a

12   statement of wealth.  They could have elected to do

13   a statement of facts in any summary judgment brief.

14   The odds on the defendants, in this particular case,

15   not renewing a motion for summary judgment, because

16   I believe they were granted leave to at the end of

17   this expert assessment, is very low.  There's no

18   doubt that they will, in fact, bring about that

19   motion and use the very same statement of fact as

20   they did in whatever other prior arguments that

21   they've already briefed.

22             So we look to what was fairly attributable

23   based on the invoices to this particular discrete

24   argument.  And while Counsel may disagree, it was a

25   good faith effort on our part to parse out what is

1    totally related to that particular issue.  And,

2    again, while there's a lot of adjectives being used,

3    this was four pages of the brief, not --

4              MR. BACHARACH:  Respectfully, the Court

5    said that it was --

6              MR. SHERMAN:  Sir, sir, sir --

7              MR. BACHARACH:  Sorry.  I thought you were

8    done.

9              THE COURT:  I'm just going to interject a

10   minute --

11             MR. SHERMAN:  For expediency, I'm done,

12   Your Honor.  Thank you very much.

13             THE COURT:  Yeah, no worries.  I'd have to

14   see briefing on this.  I'm not going to be able to

15   resolve this on this call.

16             So on the attorney's fees issue, defendants

17   can file a motion.  I'm happy to give you a briefing

18   schedule on that.  I don't think -- you can make it

19   a full-blown motion if you think it's necessary.

20   You could do a letter motion, something shorter.

21   I'd leave that up to you.  If the parties want to

22   work out a briefing schedule, that's also fine.  If

23   not, I can set one now.

24             MR. SHERMAN:  On behalf of the plaintiff,

25   we're more than happy to speak with the defendants

1    about what works in terms of a briefing schedule and

2    report to Your Honor, if that's acceptable.  On the

3    other hand, if they prefer that Your Honor set it,

4    then we understand that as well.  But we're happy to

5    speak with them and work something out that's

6    amenable to everyone if that's acceptable to the

7    Court.

8            THE COURT:  Yeah.  I mean, I think it's

9    generally best for the parties to work out a

10   schedule that works for them, and I'm happy to memo

11   endorse it.

12           Mr. Ross, did you want to say something?

13           MR. ROSS:  Yeah.  Given the difficulties in

14   working with plaintiff's counsel, I normally would

15   agree with that, but -- well, why don't we try it.

16   If we can't work out a briefing schedule, we'll

17   report to the Court.

18           THE COURT:  Okay.  Why don't you give it a

19   shot.  Again, I'm fairly flexible here, so you could

20   take as much time as you need.  And this is

21   definitely something that would require briefing.

22           On the other issue, I think I've definitely

23   heard from everyone.  I just want to look back at

24   the docket for a few things.  I will issue an order

25   relatively quickly addressing the expert discovery

1  issue.  I just want to ask one more question on

2  that.

3          I don't recall what happened or if we ever

4  addressed this at the last hearing.  But on the

5  joint expert, is that a cost that's borne only by

6  plaintiff?

7          MR. SHERMAN:  Your Honor, the expert is no

8  longer joint.  It was determined that it would be

9  plaintiff's expert.  Very same person that was

10  vetted.  And yes, it's a plaintiff's-only cost.

11          THE COURT:  Okay.

12          MR. ROSS:  Your Honor, both of these

13  issues, to me, I mean, fundamentally, there's a

14  whole history here, and plaintiffs are attempting to

15  simply pretend that the case is starting from

16  scratch.  And I just think both on this attorney's

17  fee issue, and they really -- they're part of the

18  same problem, which is that defendants have been

19  caught up into this litigation for years.  It's as

20  if the plaintiffs are trying to start from scratch

21  and take no responsibility for their delays.  And

22  it's very frustrating and unfair to my client.

23          MR. SHERMAN:  Your Honor, on behalf of the

24  plaintiff -- and, again, this is Todd Sherman -- if

25  the defendants would have just given us the access

```
 1    we asked for, this hearing, if anything, would have
 2    been reporting to you what our expert found.  So any
 3    delay now is certainly not the plaintiff.
 4              We're trying to get access just so we can
 5    do what we need to do.  The fact that we're being
 6    thwarted is why we're here.  So we would like to
 7    move forward expeditiously.  We would like to have
 8    had our expert in there making the assessment that
 9    we believe to be necessary, so that way we could
10    move forward.  And we were told no, and that's why
11    we're here.
12              THE COURT:  All right.  So then, again,
13    I'll give you a decision on that relatively quickly.
14              On the attorney's fees issue, if the
15    parties want to decide exactly how robust the
16    briefing you want to make and the time period.  If
17    you can't reach an agreement, just send me a letter,
18    and I can give you a schedule.
19              MR. SHERMAN:  Thank you very much,
20    Your Honor.  It's most appreciated.
21              MR. BACHARACH:  Thank you, Your Honor.
22              MR. ROSS:  Thank you, Your Honor.
23
24
25
```

1                    C E R T I F I C A T E

2

3       I, Marissa Mignano, certify that the foregoing

4   transcript of proceedings in the case of

5   KMS TECH, INC. v. G MISSION INC, ET AL, Docket

6   #1:20-cv-01041-GBD-VF, was

7   prepared using digital transcription software and is

8   a true and accurate record of the proceedings.

9

10

11  Signature   ___Marissa Mignano_____

12              Marissa Mignano

13

14  Date:      December 12, 2023

15

16

17

18

19

20

21

22

23

24

25