

# PARDALIS & NOHAVICKA, LLP
## — ATTORNEYS —

**VIA ECF**

October 28, 2024

Honorable Valerie Figueredo
United States Magistrate Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *KMS Tech Inc. v. G Mission Inc. et al.* -Civil Case No.: **1:20-cv-01041-GBD-DCF**

Dear Respected Judge Figueredo:

We write on behalf of Plaintiff KMS Tech, Inc. ("KMS" or "Plaintiff") in reply to defense counsel's October 23, 2024 correspondence, in further support of Plaintiff's letter-motion for which a teleconference is scheduled to be before Your Honor on December 10, 2024 (ECF 175).

Defendants' accusatory submission is pure bluster. Plaintiff's application highlights Defendants and their counsel's grossly inappropriate litigation tactics, clearly aimed at distracting the Court from their spoliation of critical evidence. Indeed, despite their loud distractions, the Defendants did not and can not deny their absolute failure to inform Plaintiff and the Court of the alleged discarding of the infringing copies of Plaintiff's software, and any software derived therefrom. Instead, the Defendant led the Court and the Plaintiff to believe that the copies existed and, indeed, the Defendants forcefully opposed providing any access to the Plaintiff. That resulted in unnecessary motion practice and unreasonably increased Plaintiff's litigation costs by forcing the Plaintiff to seek judicial intervention to compel the Defendants to provide access to all copied works. If the software had truly been discarded beforehand, the Defendants would have said so. Instead, together with their attorneys, the Defendants urged that their infringing copies of Plaintiff's software was somehow barred from disclosure and repeatedly urged the Court to bar access by Plaintiff. Clearly, the Defendant engaged in either a misguided effort to distract from their spoliation, or the misrepresentations as to the status of the copied software and its derivations persist.

The picture painted by Defense counsel is replete with distortions. When I attempted to discuss Defendants' alleged discarding of evidence, Defense counsel was dismissive, insisting that the destruction of evidence was irrelevant, while inexplicably urging that the spoliation was mitigation, while leaving no room for further discussion. While Parties may have a duty to mitigate damages, that is not a license to destroy evidence that relates to the subject matter. In the context of software, mitigation would have meant to stop copying it and to cease using it – not to destroy it – before inspection and analysis – and then to keep the destruction a secret and mislead an adversary and the Court. – Simply put, Defendants could and should have ceased using the

1

infringing materials upon receiving the cease and desist and again upon commencement of this action, store and safeguard the infringing copies and derivatives and related systems and make them available for discovery and inspection. Moreover, notwithstanding that the duty to preserve existed the moment the Defendants knew that a dispute concerning the software was a possibility, the wrong was compounded that Defense counsel had the duty to specifically inform the Defendants about the absolute burden to preserve.

As the Court has noted, there is no stipulation regarding discovery or copying (ECF 158). Defendants' self-serving argument that there was no prejudice to Plaintiff is simply wrong. Plaintiff had to incur expenses to engage in discovery motions and conduct expert discovery related to these copies – while Defendants and their lawyers had actual knowledge that the evidentiary crown jewels were discarded in violation of settled litigation procedures. Defendants never admitted that "the copies infringe," or how the infringing copies were used for their commercial gain. The Defendants' attorney's representation that there was a copying means little – particularly given their underlying claim of right to make such a copy. Indeed, a stipulation of infringement was never made an option for KMS. Rather, KMS had to retain an expert to rebut Defendants' arbitrary and baseless argument that while they brazenly copied Plaintiff's software, somehow these copies were not infringing.

Moreover, Defendants and their counsel's claim that they stopped using the PlayBox and the software upon receipt of KMS' cease and desist in 2020 is belied by the data examined by Plaintiff's expert – who was vetted by the Defendants. As explained by Plaintiff's expert, the data reveals the last use of the software to play music was logged by the Defendants' system in or about Summer 2022:



This is 2 years *after* the Defendants claim to have ceased all use (and discarded all copies and derivatives).

3

We thank the Court for its time and consideration of this matter.

Respectfully submitted,
**PARDALIS & NOHAVICKA, LLP**

 _/s/Eleni Melekou_____
Eleni Melekou, Esq.