**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

KMS TECH, INC.,

                                    Plaintiff,                              20-CV-1041 (GBD) (VF)

            -against-                                            **REPORT &**
                                                                **RECOMMENDATION**
G MISSION, INC. et al.,

                                    Defendants.

----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

**To: THE HONORABLE GEORGE B. DANIELS, United States District Judge.**

Plaintiff KMS Tech, Inc. ("KMS") brings this copyright-infringement action against

Defendants G Mission, Inc., doing business as Karaoke City ("G Mission"), and Jake Kwak

("Kwak") (collectively, "Defendants"). See ECF No. 1. On June 30, 2025, KMS moved for

default judgment against Defendants. See ECF No. 197. For the reasons that follow, I

respectfully recommend that KMS's motion be **DENIED** without prejudice.

## BACKGROUND

### A.  Factual Background

KMS is a New York corporation headquartered in Manhattan. ECF No. 1 at ¶ 1. KMS

"develops, markets, distributes and licenses computer software," including the PlayBox software.

Id. KMS created the PlayBox software "on or about 2008" and registered it with the United

States Copyright Office "on or about February of 2008" under register number TXu 2-172-793.[1]

Id. at ¶¶ 9-10.

---

[1] The complaint states that KMS "holds copyright as to" PlayBox and that "PlayBox . . .
was registered with [the] *USPTO* having register number TXu 2-172-793." ECF No. 1 at ¶¶ 9-10
(emphasis added). The United States Copyright Office, not the Unites States Patent & Trademark
Office ("USPTO"), is responsible for copyright registrations. See Dow Jones & Co., Inc. v.
Perplexity AI, Inc., 797 F. Supp. 3d 305, 340 (S.D.N.Y. 2025) (quoting Fourth Est. Pub. Benefit

1

PlayBox is a software that "enables access to operate a karaoke singing platform using [a] [W]indow[s] operating system." Id. at ¶ 9. PlayBox facilitates karaoke singing by allowing users to select songs—each assigned a unique ID number—from a curated database. Id. at ¶¶ 11-12. Once a user selects a song, the software plays the corresponding audio track and generates video graphics displaying lyrics on a connected monitor. Id. at ¶ 12. PlayBox's primary song lists are "English and international songs." Id. at ¶ 18. KMS sells computers with the PlayBox software embedded in the Windows operating system, allowing karaoke business owners "limited use." Id. at ¶ 14. KMS also provides monthly maintenance updates, which include "updated songs and updates to the PlayBox software." Id. at ¶ 15.

G Mission, doing business as Karaoke City, is a karaoke bar located at 22 West 32nd Street in Manhattan (id. at ¶ 2), and Kwak is the president of G Mission (id. at ¶ 3). Karaoke City charges customers to use karaoke machines in 20 private rooms, where customers may sing songs that are incorporated into the karaoke machines. Id. at ¶¶ 16, 45. Defendants have purchased karaoke machines from third-party vendors that primarily contain Korean pop songs. Id. at ¶ 17. Around September 2016, Defendants purchased a single PlayBox unit (model number KM-100) from KMS. Id. at ¶ 18. Until July 2018, KMS charged Defendants a monthly

---

Corp. v. Wall-Street.com, LLC, 586 U.S. 296, 299 (2019)) ("The Supreme Court . . . has held that 'registration' occurs 'when the Copyright Office registers a copyright.'"). A search of the Copyright Office's registry confirms that the PlayBox software is registered with the United States Copyright Office under "TXU002172793," with rights and permissions to "KMSTECH." Copyright | Public Records System, PLAYBOX and 2 Other Unpublished Works., https://publicrecords.copyright.gov/detailed-record/voyager_31263850 (last accessed January 9, 2026). The Court may take judicial notice of the PlayBox's copyright registration as published on the website for the Copyright Office. See Papazian v. Sony Music Ent., No. 16-CV-07911 (RJS), 2017 WL 4339662, at *6 n.6 (S.D.N.Y. Sept. 28, 2017) (citing Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005)) (noting that "[t]he Court is entitled to take judicial notice of copyright registrations as published in the Copyright Office's registry" and using registry to confirm that a register number listed in the complaint did not exist).

maintenance fee and provided Defendants with monthly updates to the PlayBox software and songs contained therein. Id. at ¶ 19.

In September 2019, KMS "was informed" that Defendants "ha[d] copied the PlayBox" software and were "us[ing] unauthorized copies of the PlayBox machines" in all of Defendants' karaoke rooms. Id. at ¶¶ 20-21. KMS believes that "Defendants are continuously misusing" its copyrighted PlayBox software and "generat[ing] revenue" as a result of such use. Id. at ¶ 29.

### B.  Procedural Background

On February 6, 2020, KMS commenced this action against Defendants G Mission, Kwak, "John Does 1-10," and "ABC Corps. 1-10."[2] See ECF No. 1. KMS asserts one claim of direct copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106(4)-(5), and one claim of common law contributory copyright infringement.[3] See id. at ¶¶ 32-54. On June 2, 2020, Defendants G Mission and Kwak, who were then represented by counsel, appeared and filed an answer. ECF Nos. 4, 6. The parties proceeded to discovery. See, e.g., ECF No. 12.

On October 13, 2021, G Mission and Kwak asserted counterclaims against KMS for breach of contract, fraud, and a declaratory judgment of non-infringement. See ECF No. 26 at ¶¶ 11-29. KMS moved to dismiss Defendants' counterclaims on October 29, 2021. See ECF No. 29. Following oral argument on May 25, 2022, the Honorable George B. Daniels granted KMS's

---

[2] KMS has never identified the John Does and ABC Corps.

[3] "Although the Copyright Act does not expressly render anyone liable for infringement committed by another, the doctrine of contributory liability emerged from common law principles and is well established in the law." Hartmann v. Apple, Inc., No. 20-CV-6049 (GHW), 2021 WL 4267820, at *6 (S.D.N.Y. Sept. 20, 2021) (internal quotation marks, citations, and alterations omitted).

motion with respect to the fraud and declaratory judgment counterclaims but denied the motion with respect to the breach of contract counterclaim. See ECF No. 67.

On December 23, 2024, the two attorneys representing Defendants moved to withdraw as counsel (see ECF No. 182) due to Defendants' failure to pay their fees and "an utter and complete breakdown of the attorney-client relationship" (see ECF No. 183 at ¶¶ 4-5, 8). The Court granted the motion to withdraw on December 30, 2024, and directed Defendants to retain new counsel and notify the Court by filing a status update by February 1, 2025. ECF No. 186. The Court warned Defendants that a corporation, like G Mission, cannot appear pro se. Id. New counsel did not appear, and Defendants did not file a status update.

On February 20, 2025, Kwak failed to appear at a conference to discuss KMS's anticipated motion for sanctions against Defendants for a discovery dispute unrelated to Defendants' failure to retain new counsel. See ECF Nos. 174, 181, 188. That same day, the Court sua sponte granted an extension of time for Defendants to retain counsel and directed Defendants to retain new counsel by March 17, 2025. ECF No. 187. The order "advised that a corporate entity such as G Mission, Inc. cannot appear pro se" and "warned that the failure to retain counsel may result in the entry of default and a default judgment against G Mission Inc." Id. New counsel for Defendants did not appear by March 17, 2025, and nor did Defendants file any update with the Court concerning their search for new counsel. On March 24, 2025, the Court gave Defendants a "final opportunity to retain new counsel for the corporate entity" and directed that new counsel for Defendants to file a notice of appearance on the docket by April 15, 2025. ECF No. 188. The Court again "advised that a corporate entity such as G Mission, Inc. cannot appear pro se" and "warned that the failure to retain counsel may result in the entry of default

4

and a default judgment against G Mission Inc." Id. New counsel for Defendants did not appear, and neither Kwak nor G Mission filed a status update with the Court.

On May 7, 2025, the Court warned Kwak that failure to defend this action could result in the entry of a default judgment and noted that G Mission Inc. had already been warned that it cannot be unrepresented and that the failure to retain counsel can result in the entry of a default judgment. See ECF No. 190. The Court directed KMS to seek a certificate of default from the Clerk of Court by May 26, 2025, "[g]iven Defendants' complete failure to participate in this action since December 30, 2024." Id.

On May 28, 2025, the Clerk of Court entered a certificate of default against Defendants. ECF No. 195. On June 30, 2025, KMS filed a motion for default judgment (ECF No. 197), in which it also requested that the Court strike Defendants' answer and remaining counterclaim (see ECF No. 199 at 21-22).[4] KMS seeks actual damages, reasonable attorneys' fees and costs, a forfeiture order pursuant to 17 U.S.C. § 503(b), and a permanent injunction. See ECF No. 199. This case was referred to the undersigned for a report and recommendation on September 3, 2025. See ECF No. 202. To date, new counsel for G Mission has not appeared and Kwak has failed to respond to the Court's multiple orders concerning the status of the case.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs judgments against a party that has failed to plead or otherwise defend itself in an action. Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011). "Entry of a default judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party." Discover Growth Fund, LLC v. OWC

---

[4] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

Pharm. Rsch. Corp., No. 20-CV-2857 (AKH), 2023 WL 3301837, at *1 (S.D.N.Y. May 8, 2023) (quoting Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 118 (S.D.N.Y. 2008)); see also Ramos v. CJ Contractor Servs., Inc., No. 23-CV-00274 (JLR) (KHP), 2024 WL 3954330, at *1 (S.D.N.Y. Aug. 2, 2024), adopted by, 2024 WL 3952643 (S.D.N.Y. Aug. 27, 2024) ("A failure to respond to court orders and otherwise defend, including a failure of a corporate defendant to appear through counsel, justifies entry of default.").

Rule 55 sets forth the two-step procedure for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011); see Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. Mickalis Pawn Shop, 645 F.3d at 128; see also Fed. R. Civ. P. 54(b). Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. See Mickalis Pawn Shop, 645 F.3d at 137. "In assessing a defaulting defendant's liability for entry of default judgment, a court is bound by the factual allegations in the complaint, which 'must themselves be sufficient to establish a right to relief.'" Doe v. City of New York, No. 20-CV-6393 (PAE) (VF), 2023 WL 2975205, at *5 (S.D.N.Y. Feb. 7, 2023), adopted by, 2023 WL 2975156 (S.D.N.Y. Mar. 3, 2023) (quoting J & J Sports Prods., Inc. v. Boodram, No. 18-CV-5087 (NGG) (SMG), 2019 WL 4463352, at *3 (E.D.N.Y. Sept. 18, 2019)).

"A defendant is always free to ignore the judicial proceedings [and] risk a default judgment[.]" Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982). The consequence is an "admission of all well-pleaded allegations against the defaulting party." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). Thus, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." Mickalis Pawn Shop, 645 F.3d at 137 (internal quotation marks and citation omitted).

The essence of Rule 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations. See Assure Glob., LLC v. Anderson, 763 F. Supp. 3d 476, 483 (S.D.N.Y. 2025); see also Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action[.]"). Therefore, the Court is "required to determine whether the [plaintiff]'s allegations are sufficient to establish [the defendant]'s liability as a matter of law[.]" Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). "The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the [non-defaulting party's] favor." WowWee Grp. v. Meirly, No. 18-CV-706 (AJN), 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).

**DISCUSSION**

## A. Jurisdiction

As a threshold matter, the jurisdictional prerequisites are satisfied. Subject-matter jurisdiction exists over KMS's copyright infringement claim pursuant to 28 U.S.C. § 1331 and § 1338. See ECF No. 1 at ¶ 6; Stokes v. MilkChocolateNYC LLC, 681 F. Supp. 3d 226, 237 (S.D.N.Y. 2023) (explaining that "[f]ederal subject matter jurisdiction exists over Plaintiff's copyright infringement claim pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1338 (jurisdiction over trademark, copyright, and patent claims)").

The Court also has personal jurisdiction over Defendants, "a necessary prerequisite to entry of a default judgment." See Reilly v. Plot Commerce, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016), adopted by, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). Under N.Y. C.P.L.R. § 301, domestic corporations are subject to personal jurisdiction, Zabrodin v. Silk 222, Inc., 702 F. Supp. 3d 102, 115 (E.D.N.Y. 2023), and "a[n] [individual] defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York." Jonas v. Est. of Leven, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015). Here, the Court has personal jurisdiction over corporate G Mission because it is a New York corporation maintaining its principal place of business, Karaoke City, in Manhattan. See ECF No. 1 at ¶¶ 2, 7; see also N.Y. C.P.L.R. § 301. And the Court has personal jurisdiction over Kwak because he is a resident of Queens County, New York. See ECF No. 1 at ¶ 3; see also Reed v. Luxury Vacation Home LLC, 632 F. Supp. 3d 489, 510 (S.D.N.Y. 2022) ("Because [defendant] is a resident of New York, this Court can properly exercise personal jurisdiction over him, pursuant to N.Y. C.P.L.R. § 301.").

B. <u>Liability</u>

In light of Defendants' default, the Court accepts as true the well-pleaded allegations in the complaint, with the exception of those allegations relating to damages. <u>See, e.g.</u>, <u>Greyhound Exhibitgroup, Inc. v. E.L. U.L Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). Nonetheless, as discussed below, KMS's allegations do not plausibly allege that Defendants copied the PlayBox software, as is required to adequately plead a claim of copyright infringement.

1. *Defendants' Liability for Direct Copyright Infringement*

KMS asserts a claim for direct copyright infringement premised on Defendants allegedly copying and duplicating the PlayBox software without a license or authorization. <u>See</u> ECF No. 1 at ¶¶ 32-42. To establish copyright infringement, a plaintiff must allege "[(a)] ownership of a valid copyright, and [(b)] copying of constituent elements of the work that are original." <u>Clanton v. UMG Recordings, Inc.</u>, 556 F. Supp. 3d 322, 327 (S.D.N.Y. 2021) (quoting <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991)). To plead that a defendant copied constituent elements of an original work, a plaintiff must show that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's" work. <u>Id.</u> (quoting <u>Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)</u>, 71 F.3d 996, 1002 (2d Cir. 1995)); <u>see also</u> <u>TufAmerica, Inc. v. Diamond</u>, 968 F. Supp. 2d 588, 595 (S.D.N.Y. 2013).

Beginning with the first element, KMS has alleged ownership of a valid copyright in the PlayBox software. "[A] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." <u>Ferdman v. CBS</u>

9

Interactive Inc. 342 F. Supp. 3d 515, 524 (S.D.N.Y. 2018) (citation omitted); see also Klauber

Bros., Inc. v. URBN US Retail LLC, No. 21-CV-4526 (GHW), 2023 WL 1818472, at *3

(S.D.N.Y. Feb. 8, 2023) (explaining that "[t]here is a statutory presumption that a copyright is

valid when it has been registered in the United States Register of Copyright") (internal quotation

marks and citation omitted). Here, KMS created the PlayBox software "on or about 2008" and

registered it with the United States Copyright Office "on or about February of 2008."[5] ECF No.

1 at ¶¶ 9-10. The register number is "TXu 2-172-793." Id. at ¶ 10. These allegations suffice to

adequately plead that KMS owns a valid copyright in the PlayBox software.

Turning to the second element of a copyright infringement claim, KMS has failed to

adequately plead that Defendants copied the PlayBox software. "A plaintiff may demonstrate

actual copying either by direct or indirect evidence, but because direct evidence of copying is

seldom available, a plaintiff may establish copying circumstantially, such as with proof that the

defendants had access to the copyrighted work and similarities that are probative of copying

between the works." Cawthon v. Zhousunyijie, No. 22-CV-03021 (LJL), 2024 WL 1156073, at

*5 (S.D.N.Y. Mar. 18, 2024) (internal quotation marks and citations omitted); see also Wozniak

v. Warner Bros. Ent. Inc., 726 F. Supp. 3d 213, 239 (S.D.N.Y. 2024) (quoting McGraw-Hill

Glob. Educ. Holdings, LLC v. Khan, 323 F. Supp. 3d 488, 498 (S.D.N.Y. 2018)) ("Absent direct

evidence of copying, a plaintiff can prove this element [of copyright infringement] 'indirectly by

demonstrating access and substantial similarity.'").

KMS's complaint does not provide any direct evidence of copying. For instance, KMS

does not allege that it inspected the software in the machines at Defendants' karaoke bar and

determined through comparison or examination that the software in Defendants' machines is

---

[5] See supra note 1.

identical to the PlayBox software. Cf. United Feature Syndicate, Inc. v. Koons, 817 F. Supp. 370, 376-77 (S.D.N.Y. 1993) (finding that there was "uncontroverted direct evidence of copying" where defendant testified during deposition that he instructed an artisan to create a sculpture that was "as close as possible" to plaintiff's copyrighted work); Axelrod & Cherveny, Architects, P.C. v. T. & S. Builders Inc., No. 05-CV-5573 (DRH) (MLO), 2008 WL 3211272, at *8 (E.D.N.Y. Aug. 6, 2008) (concluding that plaintiffs had direct evidence of copying where defendants attached copyrighted architectural design, including photographs, to defendants' advertisement flyers).

Nor does KMS plead enough facts to infer copying by Defendants through indirect or circumstantial evidence showing substantial similarity between KMS's PlayBox and Defendants' machines. To be sure, KMS has alleged that Defendants had access to the PlayBox software because Defendants purchased a PlayBox from KMS on or about September 2016. See ECF No. 1 at ¶ 18; see also Judith Ripka Designs, Ltd. v. Preville, 935 F. Supp. 237, 247 n.10 (S.D.N.Y. 1996) (citing Jewelry 10, Inc. v. Elegance Trading Co., No. 88-CV-1320 (PNL), 1991 WL 144151, at *1 (S.D.N.Y. July 20, 1991)) (explaining that plaintiffs may satisfy burden of proving access "by showing that the defendants purchased one of almost every piece they later allegedly copied"). However, there are no facts plausibly alleging that the software in Defendants' machines is substantially similar to the PlayBox software.

KMS alleges that it "was informed" in September 2019 "that the Defendants have copied the PlayBox and use[ ] unauthorized copies of the PlayBox machines in its own business." ECF No. 1 at ¶ 20. But KMS does not provide any factual details explaining who informed it of the copying and how that individual would have known or confirmed that the software was a copy of the PlayBox software. KMS further alleges that in September 2019 it "visited Defendant's [sic]

business site and discovered a karaoke machine" which KMS "believes it to be the PlayBox that is being used in all 20 private rooms," and that KMS "was informed that the rest of machines that are placed in each room were copied in its entirety." Id. at ¶¶ 21-22. But here, too, KMS does not provide any factual allegations to plausibly allege that the software being used by Defendants in their machines is substantially similar to the PlayBox software. KMS, for example, does not allege that it examined the software in Defendants' machines and determined that the software was substantially similar because of certain characteristics or components of the software. KMS does not even allege that it used Defendants' machines to examine their operation and determined through use that there are substantial similarities to the PlayBox. Although KMS alleges that Defendants' machines contain a copy of the Playbox software, that allegation is conclusory because KMS does not explain how it determined that the software in Defendants' machines was a copy of the Playbox software.

Further, KMS fails to offer any description, photograph, or rendering of the PlayBox or its software in comparison to Defendants' alleged copies, preventing the Court from itself potentially identifying any similarities between the two works. Cf. Karmagreen, LLC v. Super Chill CBD Prods., No. 23-CV-6073 (LJL), 2024 WL 1348783, at *5 (S.D.N.Y. Mar. 29, 2024) (determining that "[a] side-by-side comparison of Plaintiff's and Defendants' products reveals a clear substantial similarity" where "[t]he Complaint contain[ed] photographs demonstrating the obvious similarities between Plaintiff's and Defendants' works"). And although KMS alleges that Defendants "admitted to the fact that Defendants' copy of PlayBox was a copyright infringement," there are no factual allegations supporting this conclusory statement. See ECF No. 1 at ¶ 47. For example, KMS does not state what Defendants said, who made the alleged

12

admission, when the alleged admission was made, and in what context Defendants admitted to copyright infringement.

In seeking default judgment, KMS's motion papers rely heavily on materials gathered through discovery, including the deposition testimony of Kwak (see ECF No. 198-2) and an expert report (see ECF No. 198-3). The Court has not considered any facts or allegations outside of the complaint in determining whether KMS has adequately pled a copyright infringement claim. The Second Circuit has explained that "[t]o enter a default judgment, a district court must determine whether—after taking all well-pleaded allegations as true and making reasonable inferences in the plaintiff's favor—the plaintiff's 'allegations establish . . . liability as a matter of law.'" Henry v. Oluwole, 108 F.4th 45, 55 (2d Cir. 2024) (quoting Finkel, 577 F.3d at 84) (alteration in original); Mickalis Pawn Shop, 645 F.3d at 137 n.23 (explaining that "a district court may not enter a default judgment unless the plaintiff's complaint states a valid facial claim for relief" and citing cases); Broad. Music, Inc. v. Little City Cider Co., LLC, No. 24-CV-1300 (CR), 2025 WL 1883625, at *2 n.3 (D. Vt. July 8, 2025) (noting that "[t]o evaluate a defendant's liability on a motion for default judgment, the court may not consider documents outside the pleadings"). KMS does not point to any case from this District where a court considered materials outside of the complaint to determine whether liability was adequately pled prior to the entry of default judgment.

In short, KMS's allegation that the machines being used by Defendants contain a copy of the PlayBox software is entirely conclusory because there are no facts demonstrating how KMS determined that Defendants had copied the software. See McDonald v. West, 138 F. Supp. 3d 448, 458 (S.D.N.Y. 2015), aff'd by, 669 F. App'x 59 (2d Cir. 2016) (finding that plaintiff had failed to state a claim for copyright infringement because allegations that the works shared

13

"shuffling percussion" without any evidence of copying was not enough to allege substantial similarity); cf. IBM Corp. v. Micro Focus (US), Inc., 676 F. Supp. 3d 263, 275 (S.D.N.Y. 2023) (concluding that plaintiff adequately alleged copying where the complaint "allege[d] several specific similarities between the CICS TS WSBIND file and Micro Focus Enterprise Suite's WSBIND file") (internal quotation marks and citation omitted). KMS has thus failed to adequately plead a claim for copyright infringement.

2. *Defendants' Liability for Contributory Copyright Infringement*

KMS also asserts one claim of contributory copyright infringement premised on Defendants "providing customers the space and ability . . . to publicly perform and to publicly display [ ] songs using copyrighted PlayBox." See ECF No. 1 at ¶¶ 43-54. "Contributory infringement is based upon the common-law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor." Roberts v. BroadwayHD LLC, 518 F. Supp. 3d 719, 729-30 (S.D.N.Y. 2021) (internal quotation marks, citations, and alteration omitted). Therefore, a person commits contributory copyright infringement by "intentionally inducing or encouraging direct infringement." Id. at 730 (quoting Spinelli v. Nat'l Football League, 903 F.3d 185, 197 (2d Cir. 2018)). But "there can be no contributory infringement absent actual infringement[.]" Williams v. A & E Television Networks, 122 F. Supp. 3d 157, 165 (S.D.N.Y. 2015) (citation omitted); see also Spinelli, 903 F.3d at 197 ("Without a showing of a direct copyright infringement, secondary liability cannot be maintained.").

Here, because KMS has failed to plead Defendants' liability for direct copyright infringement, it cannot plead Defendants' secondary liability for contributary copyright infringement as a matter of law. See Lehrman v. Lovo, Inc., 790 F. Supp. 3d 348, 376-79

14

(S.D.N.Y. 2025) (dismissing contributory copyright infringement claims on the basis that "[t]here can be no contributory infringement absent actual infringement") (citation omitted); Reinhardt v. Wal-Mart Stores, Inc., 547 F. Supp. 2d 346, 355 (S.D.N.Y. 2008) ("Because I hold that there is no copyright infringement, there cannot be any contributory infringement.").

In sum, I recommend that KMS's motion for default judgment be denied. I further recommend that KMS be granted leave to file an amended complaint that adequately alleges Defendants' liability, after which KMS may renew its motion for default judgment. See NDF1, LLC v. Cunningham, 754 F. Supp. 3d 273, 288-89 (E.D.N.Y. 2024) (denying motion for default judgment and permitting plaintiff to amend the complaint to include sufficient allegations of liability).

## CONCLUSION

For the foregoing reasons, I recommend that KMS's motion for default judgment be DENIED without prejudice.

**SO ORDERED.**

DATED:       January 26, 2026
             New York, New York

VALERIE FIGUEREDO
United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable George B. Daniels. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**